**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Nidez Valencia, Jr., <br>     Plaintiff, <br> v. <br> Corizon, LLC, <br>     Defendant. | No. CV 17-03632-PHX-DGC (JZB) <br><br> **ORDER** |

Plaintiff Gregory Nidez Valencia, Jr., who is currently confined in Arizona State Prison Complex-Lewis, brought this civil rights action pursuant to 42 U.S.C. § 1983 against prison healthcare provider Corizon, LLC regarding the treatment of Plaintiff's Hepatitis C. (Doc. 1.) The parties have filed cross Motions for Summary Judgment.[1] (Docs. 19, 26.) The Court will deny Plaintiff's Motion for Summary Judgment, grant Defendant's Motion for Summary Judgment, and terminate this action.

**I.     Background**

On screening of Plaintiff's Complaint under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment medical care claim and directed Defendant to answer. (Doc. 6.) Plaintiff seeks declaratory and injunctive relief and his costs of suit. (Doc. 1.)

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response to Defendant's Motion. (Doc. 28.)

## II. Legal Standards

### A. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material (a fact that might affect the outcome of the suit under the governing law), and that the dispute is genuine (the evidence is such that a reasonable jury could return a verdict for the nonmovant). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968), but must "come forward with specific facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255.

### B. Eighth Amendment

To prevail on an Eighth Amendment medical claim, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs

1 | to this analysis: an objective prong and a subjective prong. As to the objective prong, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted). Indications that a prisoner has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60.

As to the subjective prong, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. To satisfy the knowledge component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir.2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. But the deliberate-indifference doctrine is limited. An inadvertent failure to provide adequate medical care or negligence in diagnosing or treating a medical condition do not support an Eighth Amendment claim. *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citations omitted); *see Estelle*, 429 U.S. at 106 (negligence does not rise to the level of a constitutional violation). Further, a mere difference in medical opinion does not establish deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Finally, even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

To prevail on a claim against Corizon as a private entity serving a traditional public function, Plaintiff must meet the test articulated in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-94 (1978). *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities acting under color of state law). Plaintiff must show that an official policy or custom caused the constitutional violation. *Monell*, 436 U.S. at 694. To make this showing, he must demonstrate that (1) he was deprived of a constitutional right; (2) Corizon had a policy or custom; (3) the policy or custom amounted to deliberate indifference to Plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Further, if the policy or custom in question is an unwritten one, the plaintiff must show that it is so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

**III. Facts**

    **A. Defendant's Hepatitis C Treatment Policies**

Defendant follows the recommendations set forth in the Bureau of Prisons' Clinical Guidance Manual—Evaluation and Management of Chronic Hepatitis C Virus (HCV) Infection ("BOP Manual"). (Doc. 22 (Pl.'s Statement of Facts) ¶ 12.) The BOP Manual, adopted by the Arizona Department of Corrections (ADC) and Corizon, "contains a

comprehensive framework for prioritizing prisoners for HCV treatment so that *those with the greatest need* are identified and treated first." (Doc. 25 (Def.'s Separate Statement of Facts) ¶ 6 (emphasis in original).) According to a report by Gilead Science ("Gilead Report"), the challenges facing prisons in treating prisoners infected with HCV include budgetary constraints, the high cost of treatment, and the fact that prisoner are up to thirteen times more likely to have detectable levels of HCV in the blood than the general population. (*Id*. ¶ 5.) The ADC's "Clinical Practice Guidelines for the Prevention and Treatment for Viral Hepatitis C (2017)" estimates that approximately 23% of ADC inmates are infected with HCV. (*Id.* ¶ 21.)

Progression from chronic HCV infection to fibrosis—and eventually, cirrhosis—may take years in some patients, decades in others, or may not occur at all. (*Id.* ¶ 7.) Most complications from HCV infection occur in people with cirrhosis. Therefore, assessing for cirrhosis is important for prioritizing treatment. (*Id.* ¶¶ 8, 9.)

To track the progression of HCV infection, the BOP Manual uses a prisoner's APRI score, which is determined from the results of two blood tests that measure the AST (aspartate aminotransferase) and platelet counts in the blood and is a less expensive and less invasive means of assessing fibrosis than a liver biopsy. (*Id.* ¶¶ 10, 11.) The Gilead Report also recognizes that the severity of liver disease for people with HCV can be estimated by using the APRI score and the Fibrosis-4 Index. (*Id.* ¶ 12.) Warning signs of liver inflammation can include fatigue, weakness, loss of appetite, nausea, vomiting, jaundice, and discolored feces. (*Id.* ¶ 19.)

Those prisoners with "advanced hepatic fibrosis," liver transplant patients, and those with co-morbid medical conditions are the highest priority (Priority Level One) for treatment. (*Id.* ¶ 13.) Advanced hepatic fibrosis is demonstrated through either an APRI score greater than 2, a "Metavir or Batts/Ludwig stage 3 or 4 on liver biopsy," or known or suspected cirrhosis. (*Id.* ¶ 14.) Included in the Priority Level One category are prisoners who have received liver transplants, have certain co-morbid medical conditions, immunosuppressed patients, and those who had started treatment when they were

incarcerated. (*Id.* ¶ 15.) Priority Level Two is the intermediate priority category and includes those with an APRI score greater than 1.0 and/or stage 2 fibrosis on a liver biopsy[2], or have certain co-morbid conditions including liver disease, diabetes, and chronic kidney disease. (*Id.* ¶ 16.) Priority Level Three is the lowest priority for treatment and includes those with APRI scores less than 1.0 or with stage 0−1 fibrosis on a liver biopsy. (*Id.* ¶ 17.)

Defendant's Hepatitis C Committee, which decides whether to treat HCV-infected prisoners with antivirals, has applied additional factors when approving treatment, including the absence of risky behaviors, as evidenced by no disciplinary tickets for drug use or tattoos for one year. (*Id.* ¶ 24.)

According to Plaintiff, Defendant has a custom of only considering patients with HCV for treatment via Direct Acting Antiviral medications (DAAs) if their APRI score is 2.0 or higher and will not actually treat patients with DAAs unless they also have cirrhosis of the liver.[3] (Doc. 22 ¶¶ 15, 16.)

### B. Plaintiff's HCV Treatment

On June 12, 2017, Plaintiff was evaluated by Nurse Practitioner (NP) Baskas for a new diagnosis of HCV, which Plaintiff reported he likely contracted through IV drug use. (Doc. 25 at 3 ¶ 1.) Plaintiff denied any abdomen pain, distention, nausea, vomiting, diarrhea, bilateral lower edema, or jaundice. (*Id.*) His most recent labs, taken in May 2017, showed an APRI score of 0.24. (*Id.*) Plaintiff was educated on avoiding risky behaviors related to HCV, and the plan was to monitor his condition through the chronic care clinic with new labs taken prior to each chronic care appointment. (*Id.*)

On November 9, 2017, Plaintiff's APRI score was 0.41, and he reported that he possibly acquired HCV through drug use or tattoos obtained while in prison. (*Id.* ¶ 2.) Plaintiff reported symptoms of chronic right side upper abdominal pain, swelling, bleeding,

---

[2] Because APRI scores predict the presence of cirrhosis, liver biopsies are not required. (Doc. 25 ¶ 18.)

[3] Defendant disputes these statements, but does not set forth the nature of the disputes or cite any evidence in support of its position. (*See* Doc. 25 ¶¶ 15, 16.)

1  bruising problems, jaundice, leg swelling, fatigue, and loss of appetite.  (*Id.*)  Upon
2  examination, there was no abdomen tenderness, sclera icteric (jaundice), or peripheral
3  edema noted.  (*Id.*)  NP Boryczka wrote that Plaintiff was not a candidate for treatment
4  based on his most recent APRI score of 0.41, and the plan was to monitor Plaintiff for
5  complications of HCV and to determine if he was a candidate for HCV treatment.  (*Id.*)
6  Boryczka ordered Hepatitis labs, but Plaintiff refused the labs.  He wrote on the refusal
7  form that he refused because he was "sick with the flu."  (*Id.*)

On May 20, 2018, Plaintiff saw NP Ende, who examined Plaintiff and noted that Plaintiff's abdomen was non-tender and non-distended and no jaundice was noted.  (*Id.* ¶ 3.)  Plaintiff's APRI score was 1.317, and labs were ordered.  (*Id.*)  The plan of care was to monitor Plaintiff's APRI score.  (*Id.*)  Plaintiff asserts in a Declaration that Ende seemed concerned about the escalation in Plaintiff's APRI score because it "was an indication of reinfection of the HCV."  (Doc. 20 ¶ 22.)  Plaintiff told Ende that he had not received any new tattoos, used any drug needles, did not engage in homosexual activity, and that he had just given a clean urine sample on March 23, 2018.  (*Id.* ¶ 23.)  Plaintiff states that an ultrasound was conducted and, according to Ende, "all checked out well."  (*Id.* ¶ 24.)

Plaintiff's labs were drawn on October 1, 2018 and his APRI score was 0.581.  (Doc. 25 at 4 ¶ 4.)

Plaintiff states in his Declaration that he believes the HCV "may be taking its toll on [his] liver" because he can think of no other reason why his APRI score would quadruple.  (Doc. 20 ¶ 25.)  Plaintiff states that the disease significantly affects his daily activities – he can no longer exercise due to fatigue and joint pain, he cannot write for very long due to fatigue, he suffers abdominal pain and loss of appetite, which has resulted in weight loss, and his depression is aggravated by the disease, which led to him being placed on suicide watch in January 2018 for the first time in 10 years.  (*Id.* ¶¶ 26-30.)

Plaintiff asserts that he is currently not receiving any medication or treatment for his HCV.  (Doc. 22 ¶¶ 30, 31.)  Defendant disputes these statements, asserting that Plaintiff

1 "is continuously being evaluated and assessed and his Hepatitis C is continuously being monitored." (Doc. 25 ¶¶ 30, 31.)

## IV. Discussion

### A. Serious Medical Need

There is no dispute that Plaintiff's HCV constitutes a serious medical need. Moreover, Plaintiff's treatment and medical records suggest that his condition has been worthy of review or treatment. The Court's analysis, therefore, will focus on whether Defendant's response to Plaintiff's HCV rises to the level of deliberate indifference.

### B. Deliberate Indifference

Plaintiff argues that Defendant will only consider treating HCV with DAA medications if the prisoner's APRI score is 2.0 or higher and the prisoner has cirrhosis of the liver. (Doc. 21 at 3-4.) Plaintiff contends that without receiving the DAAs, his APRI score will continue to rise and he will possibly suffer permanent liver damage. (*Id*. at 5.) Plaintiff argues that the BOP's guidelines, which Defendant follows, are not "the supreme law of the land" or a doctor's order, that they are for informational purposes only, and that "treatment decisions are patient specific." (*Id*.) Plaintiff states that his APRI score quadrupled in a six-month period, even though he did not use drugs, get tattoos, or engage in homosexual activity, and this increase "strongly implies that because he has not received any treatment for HCV, the plaintiff is at a substantial risk of serious harm caused by the disease." (*Id*. at 6.) Plaintiff argues that the "disease appears to be affecting the Plaintiff seriously for unknown reasons," which "demonstrate[s] a strong need for immediate treatment with appropriate DAA medications as a 'patient-specific' order." (*Id*.)

Defendant argues that since Plaintiff's June 2017 diagnosis of HCV, the progression of Plaintiff's disease has been carefully monitored through chronic care labs and chronic care encounters. (Doc. 26 at 8.) Defendant contends that although Plaintiff's APRI score was "briefly in Priority Level Two," providers monitored his higher APRI scores and it went down from 1.317 to .581. (*Id*.) Defendant asserts that there is no evidence that Plaintiff suffered any co-morbid condition, no documentation of any warning signs of liver

1  damage, and providers noted the presence of prison tattoos on Plaintiff, which they contend
2  "lower his chances for treatment due to his risky behavior." (*Id.*)

Absent any medical evidence that Plaintiff is likely to suffer serious harm without immediate treatment, Plaintiff fails to create a triable issue of fact that, at this stage, continued monitoring via regular lab tests and chronic care visits while he is at the lowest priority level for HCV treatment amounts to deliberate indifference to a substantial risk of serious harm. Plaintiff has not shown that Defendant's course of treatment is medically unacceptable or taken in conscious disregard of an excessive risk to his health. Plaintiff's disagreement with the course of care does not amount to deliberate indifference. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A mere difference of opinion does not amount to deliberate indifference to serious medical needs."). Plaintiff's speculation that his APRI score will continue to rise and possibly cause permanent liver damage is likewise insufficient to create a genuine issue of material fact that his course of treatment is deliberately indifferent to his serious medical needs. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th 1988) (speculative injury is not irreparable injury sufficient for a preliminary injunction).

On the current record, there is no genuine issue of material fact that Defendant's policy or custom of treating HCV amounts to deliberate indifference to Plaintiff's serious medical needs. Therefore, the Court will deny Plaintiff's Motion for Summary Judgment and will Defendant's Motion for Summary Judgment.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Summary Judgment (Doc. 19) and Defendant's Motion for Summary Judgment (Doc. 26).

(2) Plaintiff's Motion for Summary Judgment (Doc. 19) is **denied**.

(3) Defendant's Motion for Summary Judgment (Doc. 26) is **granted**, and the action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 20th day of May, 2019.

*David G. Campbell*
David G. Campbell
Senior United States District Judge